1
2
3
4
5

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FREDERICK WAYNE SMITH, | ) 1:11cv00835 DLB PC |
| | ) |
| Plaintiff, | ) ORDER DISMSSING ACTION |
| | ) WITHOUT LEAVE TO AMEND |
| vs. | ) |
| | ) |
| SECRETARY OF CDCR, et al., | ) |
| | ) |
| Defendants. | ) |

Plaintiff Frederick Wayne Smith ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis.  Plaintiff filed this civil rights action pursuant to 28 U.S.C. § 1983 on May 23, 2011.

On April 3, 2012, the Court issued a screening order dismissing the complaint with leave to amend for failure to state a claim for which relief may be granted.

Plaintiff filed a First Amended Complaint on March 11, 2013.  He names the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), Warden Harrington, Captain L.L. Woods, Lieutenant Henderson and Correctional Officer Grissom as Defendants.[1]

---

[1] On October 11, 2011, Plaintiff consented to the jurisdiction of the United States Magistrate Judge for all purposes.

**A.**   **LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235

2

(9th Cir. 2009); <u>Jones</u>, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Iqbal</u>, 556 U.S. at 678; <u>Moss</u>, 572 F.3d at 969.

**B.      PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Centinela State Prison.  The events at issue occurred while Plaintiff was incarcerated at Kern Valley State Prison ("KVSP").

Plaintiff alleges that on May 27, 2010, he was called to the law library around 12:30 p.m. He was searched by Defendant Grissom and an unknown officer.  Plaintiff asked Defendant Grissom why he was pat-searched and searched with a metal detector, and why inmates in the law library were searched, and he told Plaintiff that "staff got word you will be hit."  Compl. 4. Defendant Grissom told Plaintiff that "some kites" said he would be stabbed today and explained why Plaintiff's route to and from the law library had changed.

Plaintiff entered the law library at about 12:40 p.m. and Defendant Grissom locked the law library door.  Plaintiff was the last one to enter.  At 1:30 p.m., Plaintiff was stabbed 16-20 times.

At about 1:40 p.m., Plaintiff was taken to Kern Medical Center.  He returned to KVSP on May 28, 2013, at 1:30 a.m.  Plaintiff was given a CDC 114D lock-up order and was placed in Administrative Segregation ("Ad-Seg").  At that time, Plaintiff became aware that Inmate Cook was suspected of stabbing him.

Months before the stabbing, Plaintiff was the vice-chairman of the Men's Advisory Committee ("MAC") and Inmate Cook was the chairman.  There had been numerous assaults against two different gangs, and Defendants Wood and Henderson assigned Plaintiff to Crip-member issues.  They told Plaintiff to stop the assaults and talk with each gang member. Plaintiff tried to talk to the gang members, but they were upset because they thought that

Plaintiff was related to a policy concerning black inmates and lockdowns.  Plaintiff told the general population that Inmate Cook and Defendant Wood started the policy, which led to Cook saying that Plaintiff was an informant.  Plaintiff wrote to Defendant Harrington about a conspiracy between Defendant Wood, Defendant Henderson and Inmate Cook to get him set up to be stabbed for being an informer.

The Crips went on lockdown and Defendants Harrington, Wood and Henderson had a meeting with MAC members.  Defendant Wood told the members that they would not need Plaintiff at the meeting because he did not want to inform on inmates.  Two months later, Defendants Wood and Henderson told Plaintiff to support the alleged "Shotcallers."  Compl. 6. After the Shotcallers talked to the Crips and reported to Defendants Wood and Henderson, they were let off lockdown and attacked each other again.  Months later, Inmate Cook told Plaintiff that he wanted him to represent the Crips and asked that Plaintiff talk to Defendant Henderson and the Crips.  A few days later, Plaintiff was called out to go see Defendant Henderson. Defendant Henderson told Plaintiff that he would not let the Crips off lockdown because the fighting would continue, and that he did not trust Plaintiff's word.

After another month on lockdown, Plaintiff was called to talk to the Crip Shotcallers in the holding cage at the request of Defendant Wood.  The Shotcallers told Defendant Wood that everything was okay.  Defendant Wood told Plaintiff that he was receiving a lot of complaints about Plaintiff not being allowed to represent the Crips.  The word amongst the staff was that Plaintiff's life was in danger and that the Blood gang and Muslims wanted Plaintiff stabbed. However, the Crips had not signed on and supported Plaintiff in his vice-chairman position. Plaintiff told Defendant Wood that he had written to Defendant Harrington and told him that he was being put in harm's way by staff because younger Crips had heard Plaintiff was "coming out."  Compl. 7.  Defendant Wood told Plaintiff that he was supposed to be coming out, but his staff did not want him out and would complain to the union if he was let out to work.  Defendant

Wood showed Plaintiff a memorandum made for Defendant Harrington that said that executives of the MAC were supposed to come out when inmates were on lockdown.  Defendant Wood asked Plaintiff if he wanted to move to another yard because Wood felt that his life was in danger.  Plaintiff said yes.

Defendants Wood and Henderson called Plaintiff into the office and told him that they had received a kite indicating that Inmate Cook would stab Plaintiff.  Defendant Henderson said that he got the kite from Correctional Officer Orasco.  In May 2010, Orasco told Plaintiff that he was not going to work because they had received information that something was going to happen to Plaintiff.

On May 28, 2010, after the stabbing, Defendant Wood visited Plaintiff in Ad-Seg and said he was sorry that Plaintiff got stabbed and that he knew that he should have moved Plaintiff the first day he mentioned the danger.  Wood said that he did not move Plaintiff because he did not believe that Plaintiff would be stabbed because staff thought he was a leader to so many on the yard.

On June 1, 2010, Defendant Henderson visited Plaintiff and said that word was that he was stabbed because he was a Jew, but Henderson believed that he was stabbed for telling inmates that Inmate Cook was an informant for him and Wood.

Plaintiff also alleges that while in Ad-Seg, he spoke with Inmate Cook.  Inmate Cook told Plaintiff that Defendants Wood and Henderson talked of moving Plaintiff.

Plaintiff believes that staff knew he was in danger whenever he went to the upper yard. In March and April 2010, Defendant Henderson told Plaintiff twice that Plaintiff would not be allowed out because staff had found weapons that were supposed to be used for inmates to stab Plaintiff.

Plaintiff alleges that he personally spoke with Defendant Harrington and told him that he was not being protected and that the staff were manipulating him with the Crips.  Defendant Harrington told Plaintiff that he would look into it.

Based on these allegations, Plaintiff contends that prison officials created the risk and facilitated the attack.  The meetings with staff placed Plaintiff in danger and created a substantial risk that that he would be injured or killed.  Plaintiff contends that there is a pattern and practice of MAC members getting stabbed, and that staff at KVSP and those within CDCR are involved in an ongoing setup.  Plaintiff alleges that this violates the Equal Protection clause and is retaliation in violation of the First Amendment.

He also alleges that Defendants Wood and Henderson conspired with Inmate Cook to get Plaintiff off the Men's Advisory Committee position.  He also alleges that Defendants Wood, Henderson and Grissom failed to protect him, and that Defendant Grissom set up the attack by calling him to the library on a no-program day.  He contends that Defendant Harrington failed to protect him, and that the Secretary of CDCD has a policy of making prisoners unable to protect themselves and placing them in harm's way by turning them into a snitch.

**C.**     **DISCUSSION**

1.     Eighth Amendment Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of

an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Plaintiff alleges that Defendants Wood, Henderson, Grissom and Harrington failed to protect him from the attack by Inmate Cook.  He appears to contend that Defendants used him, as a member of the MAC, to gather information and then failed to protect him once he was placed in danger.

In the Court's first screening order, the Court explained that Plaintiff failed to demonstrate that any Defendant *disregarded* a substantial risk to Plaintiff's safety.  Although he provides more background information in his amended complaint, he again fails to meet the pleading requirements.

As he did in his original complaint, Plaintiff sufficiently alleges that a substantial risk existed and that Defendants Wood, Henderson, Grissom and Harrington were aware of the risk. He fails, however, to allege that Defendants acted with the requisite state of mind and disregarded that risk.  Plaintiff contends that Defendants created the risk and facilitated the attack, but his factual allegations do not support such a finding.

For example, Plaintiff alleges that Defendant Grissom searched inmates entering the law library with Plaintiff and changed the route that Plaintiff took to the law library.  Plaintiff suggests that Defendant Grissom set up the attack by calling Plaintiff to the law library on a no-program day, but this allegation does not change the fact that Defendant Grissom appears to have taken reasonable measures to abate the risk to Plaintiff.  Although the risk was not ultimately averted, Defendant Grissom did not disregard the risk.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  Farmer, 511 U.S. at 844-45.

As to Defendant Wood, Plaintiff alleges that he asked Plaintiff if he wanted to be moved to another yard.  Plaintiff said that he would like to be moved, but he was not ultimately

relocated.  After the incident, Plaintiff alleges that Defendant Wood apologized and said that he did not move Plaintiff because he did not think that a risk actually existed given Plaintiff's status as a leader.  Defendant Wood's belief that Plaintiff was not in danger contradicts a finding that he acted with deliberate indifference.

Plaintiff also alleges that Defendant Henderson disregarded the risk, but he provides little facts to support such a finding.  He contends that his meetings with staff, including Defendant Henderson, placed him in danger and that staff knew that he was in danger whenever he went out into the yard.  He alleges that Defendant Henderson told him in March and April 2010 that he would not be allowed out because there was a threat, but this does not link Defendant Henderson to the incident at issue.

As to Defendant Harrington, Plaintiff contends that he personally spoke with him and told him that staff were manipulating him with the Crips and were not protecting him.  He further alleges that Defendant Harrington told him that he would look into it.  However, his allegations are too vague to support a finding that Defendant Harrington knew of and disregarded a substantial risk of harm to Plaintiff.

Finally, insofar as Plaintiff allege that the Secretary of CDCR has a policy of making prisoners unable to protect themselves and turning them into snitches, he fails to allege sufficient facts to support liability.  Under § 1983, liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 129 S. Ct. at 1948-49; Ewing, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales, 567 F.3d at 570; Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to Defendant, and while the creation or enforcement of, or acquiescence in, an

unconstitutional policy may support a claim, the policy must have been the moving force behind the violation. <u>Starr</u>, 652 F.3d at 1205; <u>Jeffers v. Gomez</u>, 267 F.3d 895, 914-15 (9th Cir 2001).

Other than Plaintiff's conclusory allegation, he only cites the "inaction" of the Secretary of CDCR. Plaintiff's facts are therefore insufficient. Moreover, absent an underlying claim, there can be no liability based on a related policy.

Therefore, Plaintiff fails to state a failure to protect claim against any Defendant. Plaintiff was granted leave to amend this claim but failed to do so.

2.    <u>Equal Protection</u>

The Equal Protection Clause requires that persons who are similarly situated be treated alike. <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); <u>Shakur v. Schriro</u>, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, <u>Comm. Concerning Cmty. Improvement v. City of Modesto</u>, 583 F.3d 690, 702-03 (9th Cir. 2009); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, <u>Engquist v. Oregon Department of Agriculture</u>, 553 U.S. 591, 601-02 (2008); <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).

Although Plaintiff alleges a violation of the Equal Protection Clause, he provides no facts to support such a finding. Plaintiff does not allege that Defendants intentionally discriminated against him in any way based on his membership in a protected class.

Accordingly, he fails to state a claim under the Equal Protection Clause.

3.     Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff again fails to allege any facts that would state a First Amendment retaliation claim.  He fails to identify any adverse action based on his protected conduct, and he fails to allege any chilling effect.

Plaintiff therefore fails to state a claim against any Defendant for retaliation in violation of the First Amendment.

4.     Conspiracy

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy.  Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . "  Id.

In his original complaint, Plaintiff alleged that two other (now unnamed) Defendants conspired to deny him kosher meals.  The Court explained that Plaintiff failed to allege any facts to support the existence of a conspiracy.  Although he now attempts to allege a conspiracy among different Defendants, the result is the same.  He alleges that Defendants Wood and Henderson conspired with Inmate Cook, but his allegations are conclusory and there are no specific facts supporting the existence of a conspiracy.  Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001).  As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under § 1983.

**D.     ORDER**

Based on the above, Plaintiff has failed to state a claim against any Defendant.  Plaintiff has been afforded an opportunity to correct the deficiencies but has failed to do so.  Accordingly, this action is DISMISSED WITHOUT LEAVE TO AMEND.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012) (internal quotation marks and citation omitted).

IT IS SO ORDERED.

Dated:   **October 17, 2013**               /s/ Dennis L. Beck

UNITED STATES MAGISTRATE JUDGE

11